IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Raymond L. Forbes, | ) C/A No: 1:10-1770-CMC-SVH |
|     Petitioner, | ) |
| vs. | ) REPORT AND RECOMMENDATION |
| M.M. Mitchell, | ) |
|     Respondent. | ) |

  Petitioner Raymond L. Forbes is a federal inmate who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking to have his administrative disciplinary action for fighting with another inmate expunged and the sanctions reversed. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) D.S.C. for a Report and Recommendation on Respondent's motion to dismiss/summary judgment.[1] [Entry # 17]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion. [Entry #21]. Petitioner filed a response [Entry #23], Respondent filed a reply [Entry #24], and Petitioner filed a surreply [Entry #25]. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's

---

[1] Respondent filed a return and a motion to dismiss/summary judgment. Because both parties presented matters outside of the pleadings, pursuant to Fed. R. Civ. P. 12(d), the undersigned will treat the motion as one for summary judgment.

motion be granted.

I.      Procedural Background

Petitioner was sentenced to 120 months imprisonment by the United States District Court for the District of Kansas for discharge of a firearm during and in relation to a crime of violence. Petitioner is serving his sentence at the Edgefield, South Carolina, Federal Correctional Institution (FCI Edgefield), with a projected release date of August 28, 2012, via Good Conduct Time release.

Petitioner filed his habeas petition on July 9, 2010, challenging the judgment from a June 25, 2009 disciplinary hearing that took place at FCI Edgefield. The disciplinary hearing arose out of a June 5, 2009 charge of Fighting with Another Person (Code 201). The incident report was prepared by Officer Sherrod on June 5, 2009 at 9:25 a.m. and describes the altercation as follows:

> On June 5, 2009, at approximately 8:15 AM, while conducting a census count in Unit B2, I observed inmate Forbes, Raymond #10774-031 and inmate [redacted] arguing in Unit B2 common area in front of cell #107. Both inmates was speaking in a loud tone at each other. I ordered both inmates to stop. Both inmates continued to argue and inmate [redacted] began to walk towards inmates Forbes in an aggressive manner. I ordered inmate [redacted] to go to his cell and he complied but continued to argue with inmate Forbes. I ordered inmate Forbes to go to B2 front entrance door. I notified the operations Lieutenant and both inmates was directed to the Lieutenant's office separately.

[Entry #17-3 at 1]. According to section 14 of the incident report form, Petitioner was provided a copy of the incident report by Lieutenant C. Clark on June 5, 2009 at 1 p.m., and the matter was referred to the Unit Discipline Committee (UDC). *Id.* On June 8, 2009, a

UDC Hearing was conducted, at which Petitioner was given an opportunity to make a statement in his defense, and he stated "it was just an argument." *Id*. The UDC referred the matter to the Discipline Hearing Officer (DHO), and Petitioner was provided notice of the DHO hearing and his rights on June 8, 2009. [Entry #17-4, 17-5].

The DHO hearing was held on June 15, 2009, at which Petitioner was present and advised of his rights. In response to the charge, Petitioner stated, "It was just an argument. He just kept wanting to argue with me." [Entry #17-5 at 1]. At the hearing, Petitioner elected to call an inmate witness for his defense, who testified, "I was sleeping and heard them arguing. The old man [redacted] just kept arguing with the young guy [Petitioner]. He kept walking up on him. It could have gotten out of hand if the officer was not there." *Id*.

The DHO found Petitioner guilty of Fighting with Another Person (Code 201), as charged, and issued a written report, imposing sanctions disallowing 27 days of good credit time (GCT) and loss of commissary for 30 days. [Entry #17-5].

Petitioner appealed the DHO's decision to the Southeast Regional Director, who upheld the disciplinary actions and sanctions. [Entry #17-6, #17-7]. Next, Petitioner appealed to the Central Office, which likewise upheld the disciplinary action and sanctions. [Entry #17-8, #17-9]. At each level, Petitioner argued that he was wrongfully charged and convicted of the Code 201 violation "Fighting with Another Inmate" because he had only engaged in a verbal dispute with another inmate about whose turn it was to clean the cell, and not a physical altercation, which he contends is defined as "a close-fist altercation between two or

3

more individuals." [Entry #1-2 at 5 6].

II.     Discussion

    A.     Federal Habeas Issues

Petitioner originally filed this action as one pursuant to 42 U.S.C. § 1983, and filed an amended petition pursuant to 28 U.S.C. § 2241 after the court issued a proper form order. In his amended petition, Petitioner raises the following grounds:

| | |
|---|---|
| Ground One: | Bureau of Prisons rules and regulation require a "physical altercation" for conviction of Code 201 Fighting with Another Person. |
| Ground Two: | Denial of expungement and restoration of GCT is a violation of the Bureau of Prisons' procedural requirements in an investigation. |
| Ground Three: | Violation of right to call his witness request, Mr. Bryant. |
| Ground Four: | Cruel and unusual punishment for Grounds One, Two, and Three above. |

[Entry #1-2 at 5 7].

Although stated under the various grounds above, Petitioner's primary complaint is that his due process rights were violated at his disciplinary hearing in having been convicted of the Code 201 violation although the incident involved a verbal, and not a physical altercation. Additionally, Petitioner alleges he requested to call Correctional Counselor Mr. Bryant as a witness at his hearing and that he was denied that right because Mr. Bryant was co-conducting the hearing. These two issues will be addressed below.

4

B.     Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not

5

mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    C.    Habeas Corpus

        1.    Section 2241 Generally and Exhaustion Requirement

Generally, a habeas petitioner must present his claims to an appropriate forum before filing his petition in this court. This requirement of exhaustion is largely unavoidable. *Ex parte Hawk*, 321 U.S. 114, 117 (1944). "Unlike petitions brought under [28 U.S.C.] § 2254, which challenge the validity of a state court conviction and sentence, petitions brought under § 2241 generally challenge the execution or implementation of a sentence, such as parole matters, sentence computation, calculation of good time credits, prison disciplinary actions, and transfers." *Clemmons v. South Carolina*, C/A No. 0:08-607-RBH, 2008 WL 2845636, *1 (D.S.C. July 18, 2008).

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, courts consistently require prisoners to exhaust their administrative remedies prior to seeking habeas review under Section 2241. *See Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 490 91 (1973) (requiring exhaustion in 28 U.S.C. § 2241 matter); *Timms v. Johns*, 627 F.3d 525 (4th Cir. 2010) (noting courts require "exhaustion of alternative remedies before a prisoner can seek federal habeas relief.") (internal quotation marks omitted). Exhaustion allows prison officials to develop a factual record and "an opportunity to resolve disputes concerning the exercise of

their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007).

The BOP has established an Administrative Remedy Program, 28 C.F.R. § 542.10, et seq., through which an inmate may seek formal review of issues or complaints relating to confinement. The BOP's Administrative Remedy Program is generally a four-step grievance procedure.[2] As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. *See* 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. *Id.* The inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests within 20 calendar days of the event giving rise to his complaint, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. *Id.*, § 542.14(d). The Warden of the institution (or the Regional Director) must respond to the inmate's Request within 20 days (or 30 days if submitted to the Regional Director). *Id.*, § 542.18. The inmate may appeal the Warden's decision within 20 days to the Regional Director on a BP-10. *Id.*, § 542.15(a) and (b). The inmate may appeal the Regional Director's decision within 30 days to General Counsel on a BP-11 form. *Id*. General Counsel has 40 days to respond to the inmate's appeal. *Id.*, § 542.18. The administrative process

---

[2] An exception to filing at all four levels of the process is provided for appeals of action taken by a DHO, in which event, "DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located." 28 C.F.R. 542, 14(d)(2). This exception allows the inmate to bypass filing an appeal at the institution level, with the appeal need only to be reviewed at the Regional and Central Office levels.

is exhausted when General Counsel issues a ruling on the inmate's final appeal. *Id.*, § 542.15(a) ("Appeal to the General Counsel is the final administrative appeal.").

        2.        Petitioner's Due Process Claim Fails on Its Merits[3]

Petitioner principally complains his due process rights were violated at his disciplinary hearing because he should not have been charged with a Code 201 Fighting with Another Inmate. Petitioner argues that such a violation requires a "physical altercation," which he states is defined as "a close-fist altercation between two or more individuals." [Entry # 1-2 at 5 6]. He admits he was involved in a verbal dispute with another inmate, but he argues that a verbal dispute does not meet this definition and that he should not have been found to have committed the Code 201 violation.

Certain procedural safeguards apply when loss of statutory good time credit is at issue. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Under *Wolff*, an inmate is entitled to: (1) written notice of the charges at least twenty-four hours in advance of the hearing; (2) a written statement by the factfinder as to the evidence relied on and reasons for disciplinary action; and (3) the opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. *Id.* at 563 66. Additionally, DHO findings revoking a prisoner's good-time credit must be supported by "some evidence in the record." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S.

---

[3]Respondent concedes that Petitioner exhausted his administrative remedies as to his claim that a Code 201 violation does not include a verbal altercation. *See* Decl. of BOP attorney Tami Cassaro, ¶2 [Entry #17-2].

445, 454 56 (1985). Federal courts, however, will not review the accuracy of the DHO's fact finding de novo or for clear error. *See Baker v. Lyles*, 904 F.2d 925, 932 (4th Cir. 1990). The *Hill* Court declined to adopt a more stringent evidentiary standard as a constitutional requirement, stating:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.

*Hill,* 472 U.S. at 456. The "some evidence" standard is a lenient one, requiring no more than "a modicum of evidence," and is met if there is any evidence in the record that could support the decision. *Id.* at 455 56; *Baker* at 932. This standard requires "only that the decision not be arbitrary or without support in the record." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). As the *Hill* Court noted:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

472 U.S. at 455 56.

The undersigned is of the opinion that FCI Edgefield provided Petitioner with all of the procedural protections to which he was entitled. Petitioner received written notice, a hearing, and the opportunity to call witnesses and present documentary evidence. Petitioner testified in his own defense and presented the testimony of an inmate witness who said he heard an older inmate who "just kept arguing with [Petitioner]." [Entry #17-5 at 1]. Petitioner received notice

9

of the disciplinary hearing in advance of the June 15, 2009 hearing date.

Judicial review of prison disciplinary actions is limited solely to a determination to whether there is some evidence in the record to support the DHO's decision. Here, there is some evidence in the record to support the DHO's decision, namely Officer Sherrod's incident report, Petitioner's own testimony, and his inmate witness's statement that Petitioner had a verbal altercation with another inmate. The DHO found that fighting is considered to be "any physical or verbal altercation between two or more individuals," and found Petitioner had been properly charged. [Entry #17-5 at 3]. The DHO issued a written decision identifying the evidence he relied on in forming his decision, as well as the reasons for convicting Petitioner and taking the disciplinary actions, as follows:

> Fighting with another inmate hampers staff's ability to control their area of responsibility and poses a potential hazard to staff, and other inmates. This type of behavior interferes with the secure orderly running of the institution. Dis GCT of 27 days was imposed to meet PLRA sentencing guidelines. Loss of commissary for 30 days was imposed to deter future misconduct.

[Entry #17-5 at 3].

As for Petitioner's challenge to the sufficiency of the evidence that the DHO considered in finding that he violated Code 201 for a mere verbal altercation, the undersigned finds that the evidentiary standard of *Hill* was satisfied in this case. Petitioner has presented no evidence that Code 201 Fighting with Another Person is limited to physical altercations. He has presented no BOP regulation, code manual, or FCI Edgefield policy that defines this disciplinary code as inapplicable to verbal altercations. Petitioner's allegation that he is unaware of any inmate

having been disciplined pursuant to Code 201 for verbal altercations does not rise to the level of a habeas claim.

> 3. Petitioner Failed to Exhaust Administrative Remedies as to his Denial-of-Witness Claim

Petitioner also claims he was denied the right to call Bryant as a witness who would have supported his argument that he had only engaged in a verbal dispute. Respondent argues that this claim of the petition should be dismissed because Petitioner did not exhaust his administrative remedies before proceeding in federal court, and that his failure to exhaust should not be excused.

Respondent submitted the declaration of BOP attorney Tami Cassaro, along with several exhibits. [Entry #17-2]. Included in her official duties is the responsibility of researching logs and records maintained by the BOP on SENTRY concerning administrative remedies. *Id*., ¶2. Ms. Cassaro declared that she conducted a diligent search of the administrative remedy records maintained by the BOP, and her search revealed that Petitioner has not exhausted his BOP administrative remedy process regarding the issue of whether he was denied the right to call his Correctional Counselor as a witness during his DHO hearing on June 15, 2009. *Id*. The exhibits attached to Ms. Cassaro's declaration include Petitioner's appeal to the Southeast Regional Director and to the Central Office, neither of which indicate Petitioner having raised the issue of his denial-of-witness claim. [Entry #17-6, #17-8]. Based on a review of the record, the undersigned recommends finding that Petitioner failed to properly exhaust his administrative remedies with respect to his denial-of-witness claim prior to initiating the above action.

In his surreply to Respondent's motion, Petitioner argues that Respondent did not address his claim that Operations Lieutenant Santiago violated a section of the BOP's code of conduct. [Entry #25 at 3]. As evidence that he raised the claim, he cites to his Regional Administrative Remedy Appeal and the Regional Director's Response to that Appeal. [Entry #25-2 at 1,3]. In his Regional Appeal, Petitioner does claim that Santiago retaliated against him in violation of BOP policy. *Id*. at 1. However, in his response to that appeal, the Regional Director did not comment on the substance of Petitioner's claim of staff misconduct, explaining to Petitioner that he needed to first raise that claim at the institutional level. *Id*. at 3.

The undersigned finds this claim was one of the new arguments Petitioner had not raised in his Amended Petition that Respondent seeks to have dismissed for failure to exhaust administrative remedies. [Entry #24 at 6  7]. The undersigned agrees and recommends that this claim be dismissed for failure to exhaust administrative remedies, as well.

Next, the undersigned considers whether Petitioner should be excused from the exhaustion requirement. Exhaustion may be excused under certain circumstances, such as by a showing of futility or irreparable injury. The undersigned finds no valid reason to waive the BOP exhaustion requirement. The BOP needs the opportunity to correct its own alleged error and possibly grant relief to Petitioner, and the BOP needs to develop a factual record and apply its expertise to the situation. *See Moscato v. Fed. B.O.P.*, 98 F.3d 757, 761 (3d Cir. 1996) (explaining three reasons to require exhaustion), *cited with approval by Watkins v. Compton*, 126 Fed. App'x 621 (4th Cir. 2005) (unpublished).

Even if Petitioner were able to establish good cause for his failure to exhaust his denial-of-witness claim and claim of staff misconduct, he has not established that he is entitled to habeas relief. Petitioner argues that the DHO denied him the opportunity to call witness Bryant whom he purportedly requested to have testify at his hearing, which the court considers as a claim that he was denied procedural due process. Petitioner submits that if he had been permitted to call Bryant, he would have been able to demonstrate that he merely had a verbal altercation, and no physical fight, with the other inmate. However, Petitioner's own testimony that it was just an argument, together with the testimony of his inmate witness that he heard the older inmate keep arguing with Petitioner, supported his position that he only verbally argued with another inmate. That is, the fact that Petitioner lost his hearing despite having some evidence to support his arguments did not violate his due process rights. The DHO simply did not accept Petitioner's argument that the Code 201 violation required physical contact. Petitioner's claim that Code 201 is void for vagueness is likewise without merit. Similarly, Petitioner was specifically directed to raise his claim of staff misconduct at the institutional level, but chose not to do so.

Based on Petitioner's failure to exhaust his administrative remedies with respect to the denial-of-witness claim and staff misconduct claim, the undersigned recommends that Respondent's motion for summary judgment be granted on those issues. Further, even if Petitioner's two unexhausted claims were considered on their merits, the undersigned recommends that Respondent's motion for summary judgment be granted because he was

13

afforded due process.

Finally, the loss of commissary punishment Petitioner suffered as a result of the disciplinary hearing does not give rise to a federal habeas corpus claim because it fails to affect the length, or to make a quantum change in the level, of his confinement. *See Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000) (denying habeas relief for commissary and cell restrictions). Therefore, it fails to state a habeas claim and should be dismissed.

III.    Conclusion

For the foregoing reasons, it is recommended that Petitioner's habeas petition be dismissed and Respondent's Motion for Summary Judgment be granted.

IT IS SO RECOMMENDED.

July 22, 2011                                                       Shiva V. Hodges
Florence, South Carolina                                   United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**